UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ACE BLACK RANCHES, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et. al,<br><br>  Defendant. | Case No. 1:21-cv-214-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court is Plaintiff Ace Black Ranches, LLC's Emergency Motion for Preliminary Injunction (Dkt. 4) and Emergency Motion to Unseal All Documents Supporting EPA Administrative Warrant and for an Emergency Hearing (Dkt. 19). The Court has determined that these motions can be decided based on the briefing. For the following reasons, the Court will deny both motions.[1]

---

[1] Also pending is Ace Black Ranches' motion for leave to file an overlength reply brief in support of the motion for preliminary injunction. (Dkt. 25.) Although the Court does not find that good cause exists for the overlength reply, the Court has considered the entire reply brief in deciding the motion for preliminary injunction.

MEMORANDUM DECISION AND ORDER - 1

## BACKGROUND[2]

Ace Black Ranches, LLC, (ABR)[3] owns and operates a ranch in Bruneau, Idaho. (Dkt. 7-4.) The ranch is transected by the Bruneau River, a perennial tributary to the Snake River. (Bujak Decl. ¶ 17, Dkt. 17-29.) In February 2021, the Walla Walla District of the Army Corps of Engineers informed ABR of potential Clean Water Act (CWA) violations taking place at the ranch resulting from alleged unpermitted dredge and fill activities below the ordinary high-water mark. The letter supplied approximate coordinates conveying the location of a portion of ABR's property where the alleged activities were occurring but omitted any specifics as to the exact location of the alleged violations. The letter also informed ABR that, due to a memorandum of agreement between the Corps and the Environmental Protection Agency, the case might be partially or wholly transferred to the EPA for further action.

On the same day, ABR received an Information Request from the EPA indicating that the EPA had been notified by an unidentified third party that ABR

---

[2] Except as otherwise noted, the following background information is taken from ABR's corrected memorandum in support of the motion for preliminary injunction. (Dkt. 7-4.)

[3] ABR refers to themselves in their filings as both Ace Black Ranches, LLC, and as Ace Black ranches, LLP. Because the Complaint, Dkt. 1, was filed under the "LLC" title, that title will be used in this opinion.

was in violation of the CWA Section 402. The letter further requested ABR to respond to a series of inquiries within thirty days of receipt of the request. Due to the length and breadth of the request, ABR sought and received a thirty-day extension of time to finish and return the request from both the Corps and EPA.

On or about April 1, 2021, ABR submitted Freedom of Information Act requests to both the Corps and the EPA. The FOIA requests sought digital and hardcopy information, aerial and ground photographs, maps, and other data in the possession of each respective agency identifying the locations of areas of interest relating to, and the bases for, that agency's initiation of a joint CWA 402/404 investigation of the Plaintiff and its ranching operations and other activities. Both agencies acknowledged receipt of the FOIA requests, and the parties scheduled a Zoom meeting to discuss how each could achieve their respective objectives.

In responsive letters sent to ABR following the meeting, the EPA and the Corps agreed to grant ABR's request for a ninety-day extension to respond to the Information Request. The Corps also requested ABR's consent to convene an onsite inspection of its properties before the end of the second week of May 2021. ABR responded positively to the Corps request with the following four conditions:

1. The onsite meeting would need to be scheduled such that ABR's counsel and environmental consultants could be present;

2. Before the onsite meeting, ABR and their representatives would need to be informed of the areas of concern evidenced by the information requested in their FOIA requests;

3. The proposed scope of the onsite inspection would be focused on "the fields located nearest to, alongside, and across the Bruneau River, including how to protect those fields from seasonal river flooding or inundation;" and

4. That the Corps assume lead agency status over the investigation.

On April 22, 2021, the Corps responded to ABR, indicating that it would agree to the first condition regarding the scheduling of the onsite inspection. As to the second condition, the Corps explained that the FOIA request was being appropriately processed. The Corps rejected the third condition—the proposed limitation of the scope of the inspection. And finally, as to the fourth condition, the Corps stated it would consider assuming lead agency status over the investigation. On the same day, the EPA responded in a similar fashion but indicated that the FOIA request should not delay the inspection and that they would provide "an outline of the proposed areas of the Site that EPA would like to view during the visit." The EPA further informed ABR that, if ABR would not consent to the on-site inspection, the agency would explore "other options for obtaining Site access."

ABR responded to the Corps and EPA's responses on April 26, 2021, stating that it preferred an inspection to occur over a successive three-day period during the week of May 17, 2021. They also reiterated their demand for responses to their

FOIA requests prior to any visit and that the scope of the inspection would need to be limited unless information contained in the FOIA response warranted an expansion.

On April 28, 2021, the Corps responded to ABR informing them that the Corps and the EPA would conduct the onsite inspection May 18-20, 2021. The Corps further stated that it had compiled all responsive documents for the FOIA request and would send those responsive documents to the EPA for a final release determination.

On May 4, 2021, the EPA provided an "interim" response to ABR's FOIA request, providing six documents. The EPA's FOIA Officer explained that, since the FOIA request was "complex" and required "extensive" interagency consultation, the agency did not expect to provide another FOIA response until July 15, 2021, at the earliest, and did not expect to provide a complete FOIA response until October 14, 2021. ABR was not satisfied with the interim response from the EPA and believed that the EPA failed to provide the documentation ABR requested. Three days later, on May 7, 2021, the EPA sent ABR its proposed site inspection outline and agenda, which ABR also found unsatisfactory.

During the week of May 10, 2021, EPA and Corps personnel traveled to Bruneau from Seattle, Portland, Walla Walla, Idaho Falls, and Boise in preparation from the scheduled onsite inspection. (Bujak Decl. ¶ 13, Dkt. 17-29.) However, at

10:30 p.m. on May 17, 2021, ABR withdrew its consent to the visit and informed the EPA that it would be filing a complaint and an emergency motion the following day.[4] (Dkt. 17-13.)

After the foregoing events unfolded, the EPA applied for and received an *ex parte* administrative search warrant from United States Magistrate Judge Candy W. Dale to search ABR's property. (Dkt. 17-26.) In response, ABR filed an Emergency Motion to Unseal All Documents Supporting EPA Administrative Warrant and For Emergency Hearing. (Dkt. 19.) Shortly after this second "Emergency Motion" was filed, the Court's staff scheduled an informal telephonic conference with the parties' counsel to determine the nature of the emergency. During that conference, the EPA informed the Court's staff and ABR's counsel that the warrant was in the process of being executed and that the EPA expected execution of the warrant to be completed by the end of the day. The EPA also agreed to seek an order from Judge Dale to unseal the warrant application and supporting documents on the condition that the EPA would be allowed to first

---

[4] Although titled an "Emergency Motion," the memorandum in support of the motion explicitly states that ABR did not seek an expedited hearing but preferred a normal briefing schedule. (Dkt. 7-4 at 2.) Therefore, the Court has not treated the motion as an emergency motion.

redact any identifying information concerning a confidential informant. (Dkt. 28.) The parties agreed to this approach.

The EPA subsequently filed a motion before Judge Dale requesting permission to file redacted copies of the administrative warrant application and supporting documents, removing information regarding any confidential informant. *See United States v. Ace Black Ranches, LLP*, Case No. 1:21-mj-00537-CWD. Judge Dale granted the motion and on June 28, 2021, the EPA forwarded the entire redacted warrant application and supporting documents to ABR's counsel. (*See* Dkts. 24-2, 28-1, 28-2.) On the same day, the EPA sent ABR's counsel courtesy color copies of the aerial and surveillance photographs. (*See* Dkt. 28-2.) The return on the search warrant has also been executed and filed. (*See* Case No. 1:21-mj-00537-CWD, Dkt. 7.)

## ANALYSIS

### A. Motion for Preliminary Injunction

#### 1. Legal Standard

Preliminary injunctions serve to preserve the status quo and prevent irreparable harm until a court can rule on the merits. See *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). The moving party must establish (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities favors issuing the

injunction; and (4) that the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *YJ Guide Serv., LLC v. Probert*, 2020 WL 2202442, at *1 (D. Idaho May 6, 2020) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "Generally, injunctions 'are not granted unless extreme or very serious damage will result . . . .'" *Ruznic v. Corizon Med. Servs.*, 2020 WL 4785436, at *2 (D. Idaho Aug. 18, 2020) (citation omitted).

## 2. Discussion

ABR requests this court to preliminarily enjoin the EPA from entering on to their property until the EPA adequately responds to the FOIA requests that ABR filed. ABR argues that, if the EPA may enter their property before they receive such information, their Fourth Amendment right not to be subjected to unreasonable searches and seizures and their Fifth Amendment Due Process rights will be denied.

As discussed above, the EPA has already entered ABR's property after having obtained and executed an administrative search warrant. Thus, ABR's motion for a preliminary injunction to prevent such entry is moot. *See Koppers Indus., Inc. v. E.P.A.*, 902 F.2d 756, 759 (9th Cir. 1990) (appeal from denial of motion to quash administrative warrant moot where warrant was fully executed

prior to appeal); *Massey v. Josephine Cty.*, 1999 WL 511266, *1 (9th Cir. 1999) (unpublished disposition) ("Because the arrest warrant which Massey sought to have enjoined was already executed, Massey's request for an injunction is moot.").

The finding of mootness does not, however, end the inquiry. Instead, the Court must determine whether the motion for preliminary injunctive relief falls within the "capable of repetition, yet evading review" exception to the mootness doctrine. *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). "This exception is generally limited to cases in which the challenged action is too short in duration to be fully litigated prior to its cessation or expiration, and there is a reasonable expectation that the same complaining party will be subject to the same action again." *Koppers*, 902 F.2d at 758-59.

To fall within the "capable of repetition, yet evading review" exception where, as here, the case is not a class action, two elements must be met: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein*, 423 U.S. at 149.

The Court assumes, without deciding, that the first element is met here—that the challenged action was in its duration too short to be fully litigation prior to its cessation or expiration.  However, the second element is not.

ABR contends that there is a strong likelihood the EPA will seek another *ex parte* administrative warrant to enter onto the property. However, ABR fails to cite to any evidence supporting this contention. And, the Court has not located any evidence demonstrating a reasonable expectation that ABR will be subjected to this same action again. As noted above, the return on the warrant has been executed and filed, and there is no reason to believe, based on the information currently before the Court, that the EPA will seek yet another administrative warrant

Finally, even if the Court were to find that the "capable of repetition, yet evading review" exception applies here, the Court would still deny the motion for preliminary injunctive relief because ABR has failed to demonstrate irreparable harm. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction.")

ABR argues that being the target of an investigation alone creates the likelihood of irreparable harm by preventing ABR and their counsel from "developing an adequate legal and scientific defense against… potential CWA violation allegations." (Dkt. 7-4 at 17.) However, being subject to an investigation alone does not constitute irreparable harm because it can be redressed by a legal or equitable remedy following a trial. *See Optinrealbig.com, LLC v. Ironport Sys., Inc.*, 323 F. Supp. 2d 1037, 1050 (N.D. Cal. 2004) (citing *Public Util. Comm'n v.*

**MEMORANDUM DECISION AND ORDER - 10**

*FERC*, 814 F.2d 560, 562 (9th Cir. 1987). In other words, if the EPA brings an administrative action against ABR, ABR will have the opportunity to challenge the EPA's procedures and violation allegations in the proper venue of an administrative hearing.

Furthermore, no irreparable harm exists when there is only the potential for an enforcement action, absent more. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 161-64 (2010); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011) (affirming district court finding of no irreparable harm after noting that "[Plaintiffs'] alleged irreparable harms hinged on future Animal and Plant Health Inspection Service decisions, and nothing prevented Plaintiffs from filing a new legal challenge if and when those decisions were made."). Like the plaintiff in *Ctr. For Food Safety*, ABR does not face irreparable harm based on the potential of a future enforcement action. *See* 636 F3d at 1174. If EPA brings an enforcement action against ABR, then ABR can bring challenges to that enforcement action and seek appropriate relief at that time. *See id.*; *see also Monsanto*, 561 U.S. at 164 (warning against premature review of regulatory actions).

The Court also finds that ABR has failed to demonstrate that the balance of equities tips in its favor, or that the public's interest will be served by a preliminary injunction.

The Clean Water Act (CWA) prohibits, *inter alia*, the unpermitted discharge of pollutants to navigable waters of the United States, 33 U.S.C. § 1311(a), to "restore and maintain the chemical, physical and biological integrity of the Nation's waters." *Id.* at § 1251(a). To effectuate the CWA's goals, the EPA has been authorized to demand information from potential polluters and to enter and inspect the lands relevant to the potential discharge of those pollutants. *See id.* at § 1318(a)(A)-(B). The CWA is a comprehensive act that was designed to safeguard both the nation's natural resources and the public health.

Here, ABR effectively asks the Court to find what no other Court has—that the CWA and FOIA are inextricably linked such that EPA's right to investigate CWA violations under the former is predicated on the EPA responding to any request under the latter. This is not supported by the statutes themselves or any court decision cited by ABR. To the extent ABR believes the EPA has not complied with the FOIA requirements, it may bring a claim under that statute.

In short, there is no indication that the equities weigh in favor of a preliminary injunction, but rather, they weigh in favor of allowing the EPA to perform its statutory duty to protect the nation's natural resources and public health under the CWA. The public interest would not be served by permitting a person to dictate the terms of an EPA investigation of potential CWA violations, and thereby

hamper the EPA in that investigation, by comingling the requirements of unrelated statutes.

B.   **Motion to Unseal and for Emergency Hearing**

ABR's second motion requests this Court to order the EPA to seek to have the warrant application and all supporting documents and exhibits unsealed and turned over to ABR and its counsel.

As discussed above, the EPA voluntarily requested, and Judge Dale granted, authorization for EPA to file, and to produce in the present case, a redacted copy of the warrant application and supporting documents. (*See* Case No. No. 1:21- MJ-00537-CWD, Dkt. 4.) The EPA forwarded a copy of the redacted warrant application and supporting documents to ABR's counsel on June 28, 2021.

ABR concedes that the EPA has provided an unsealed redacted copy of the warrant application and documents submitted in support of that application (Dkt. 31 at 2 n.1) but contends that the motion to unseal is not moot because ABR sought to have the EPA unseal *all case documents and the case in toto* (Dkt. 31 at 2). In other words, ABR is taking the position that its motion to unseal went beyond the administrative warrant application and the documents submitted in support of that warrant application and extends to the entire case file.

The Court does not read ABR's motion to unseal to extend beyond the warrant application and documents submitted in support of that application. (*See*

MEMORANDUM DECISION AND ORDER - 13

Dkt. 19 at 2 (ABR's motion stating that ABR is seeking to unseal the affidavits, exhibits, and other documents supporting the administrative warrant "pursuant to its private right to secure access to search warrant materials, including the supporting affidavit, grounded in the Fourth Amendment").). ABR's motion to unseal and for emergency hearing will thus be denied as moot. To the extent ABR seeks access to, and the unsealing of, materials outside of the warrant application, and the documents submitted in support of that application, it may seek those materials through the discovery process.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Emergency Motion for Preliminary Injunction (Dkt. 4) is **DENIED** as moot.

2. Plaintiff's Emergency Motion to Unseal and for Emergency Hearing (Dkt. 19) is **DENIED** as moot.

DATED: July 23, 2021

B. Lynn Winmill
U.S. District Court Judge