UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ACE BLACK RANCHES, LLP,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES<br>ENVIRONMENTAL PROTECTION<br>AGENCY, et al.,<br><br>        Defendants. | Case No. 1:21-cv-00214-BLW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Plaintiff, Ace Black Ranches, brings this Clean Water Act pre-enforcement action against the U.S. Environmental Protection Agency (EPA), the U.S. Army Corp of Engineers (the Corps), and various individual defendants in both their official and individual capacities. (Dkt. 35.) Currently before the Court are Defendants' motion to strike or dismiss the First Amended Complaint (Dkt. 38); Plaintiff's motion for leave to file a Second Amended Complaint (Dkt. 44); Defendants' second motion to dismiss (Dkt. 50);  and Plaintiff's motion to file supplemental authority (Dkt. 69.) For the reasons discussed below, the Court will grant the second motion to dismiss (Dkt. 44) and deny the remaining motions.

# BACKGROUND[1]

In February 2021, Plaintiff Ace Black Ranches (ABR) received letters from the Corps and the EPA. The letters informed ABR that the agencies had received information that ABR, or persons acting on ABR's behalf, "may have discharged dredged or fill material" into protected waters without authorization or permits allowing ABR to do so and that ABR's conduct appeared to violate the Clean Water Act (CWA). The letters also advised ABR and its managing partner to stop performing all such activities until the required permit or authorization was obtained. The letters further advised ABR that an investigation would be conducted to determine whether CWA violations had occurred, as well as the extent of any violation, any mitigating factors, and the appropriate resolution of any violation. Finally, the letters included requests for information, and required ABR to provide the requested information within 30 days.

In March 2021, ABR requested a 30-day extension of the deadline to

---

[1] For purposes of the pending motions, the Court takes the factual allegations in the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, because of the intertwined nature of the pending motions and the Second Amended Complaint, the Court will review the allegations from both the First Amended Complaint and the proposed Second Amended Complaint in deciding the pending motions. The Court also notes that ABR failed to comply with the Local Rules when it filed its motion for leave to amend because it failed to provide a redline version of the proposed amended complaint as required by Local Civ. R. 15.1.

respond to the agencies' information requests. This would have extended the deadline for ABR's response to April 12, 2021, for the Corps' request, and to April 19, 2021, for EPA's request.

On April 1, 2021, ABR submitted Freedom of Information Act (FOIA) requests to both the Corps' local regulatory office and the EPA Region 10 office. The FOIA requests sought digital and hardcopy information, photographs, maps, and other data in possession of the Corps and EPA identifying the locations of the areas of interest related to the agencies' February 2021 letters and the CWA investigations discussed therein.

On April 7, 2021, counsel for ABR and counsel for the agencies met and conferred. During this meeting, ABR's counsel asked for an additional 90-day extension of the deadline for responding to the agencies' information requests. The agencies approved the request, giving ABR until July 12, 2021, to respond, but requested that ABR provide any information it was able to prior to the extended deadline. Also discussed during this meeting was ABR's FOIA requests and the agencies' request to schedule a visit to ABR's property as soon as practicable and preferably before the second week of May 2021.

About a week later, ABR responded to the agencies' request for an onsite visit, stating it would agree to the proposed onsite visit with certain conditions,

including that ABR wanted to have the agencies' responses to ABR's FOIA requests prior to the onsite visit.

The parties corresponded regarding the voluntary onsite visit and finally reached an agreement for the onsite visit to occur May 18-20, 2021. In agreeing to the onsite visit, ABR emphasized that it needed the agencies' responses to ABR's FOIA requests prior to the visit. ABR also sought the agencies' agreement to limit the scope of the proposed onsite visit to certain areas specified by ABR.

The agencies declined to agree to the limitations proposed by ABR, but stated that they would share with ABR prior to the onsite visit an outline of the areas the agencies wanted to view during the visit.

ABR received an interim response to their FOIA requests prior to the date set for the onsite visit, but it did not receive a full response. This interim response stated that ABR's FOIA response was "complex," and explained that EPA needed to reconfirm the types of information/records ABR was seeking and engage in extensive consultation with other agencies. ABR alleges that this was false—that ABR's FOIA request was not complex, and that EPA's explanations were not true. ABR believes, based on the  absence of certain information from the agencies' interim response, that the agencies' proposed onsite visit was nothing more than a "fishing expedition."

On May 7, 2021, ABR received information from EPA regarding the upcoming May 18-20 onsite visit, including a map of a 383-acre area of interest. EPA explained that, during the site visit, they intended to focus on collecting data within the boundary of the area indicated on the map. ABR believed that this communication from EPA indicated that the agencies would seek to schedule additional onsite visits to ABR's ranch in the future based on data collected during the May 18-20 visit. ABR also does not believe that the information provided to ABR by the agencies regarding the onsite visit was adequate.

On May 17, 2021, the day before the scheduled onsite visit, ABR informed the agencies that ABR was withdrawing its consent to the visit. On that same day, ABR filed the present action.[2]

On May 18, 2021, the EPA applied for and received an *ex parte* administrative search warrant in a separate proceeding before Magistrate Judge Candy Dale. That warrant allowed the agencies to search ABR's property.[3] *See United States of America v. Ace Black Ranches, LLP*, Case No. 1:21-mj-00537-

---

[2] As part of that filing, ABR filed an "Emergency Motion for Preliminary Injunction." (Dkt. 4.) The Court ultimately denied that motion as moot. (*See* Dkt. 34.)

[3] After filing a motion in the present case to unseal the administrative search warrant application, the Government sought and obtained an order from Judge Dale unsealing the warrant application and allowing the Government to provide a redacted copy of that application to ABR, which the Government has done.

CWD-1 (D. Idaho). The search warrant was executed on June 14, 2021.

On July 23, 2021, the Government moved to dismiss this action for failure to state a claim. (Dkt. 32.) In response, ABR filed a first amended complaint (FAC) (Dkt. 35), which mooted the Government's motion to dismiss (*see* Dkt. 37).

Subsequently, Defendants filed a motion to strike or dismiss the FAC (Dkt. 38); ABR filed a motion for leave to file a second amended complaint (Dkt. 44); and Defendants filed a second motion to dismiss (Dkt. 50). ABR also subsequently filed a notice of supplemental authority (Dkt. 69).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). There are two principles that the Court must keep in mind in deciding a motion to dismiss. First, "[a]lthough for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.' " *Id.* (quoting *Twombly*, 550 U.S. at 555).

"Second, only a complaint that states a plausible claim for relief survives a

motion to dismiss." *Id.* at 679 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted; alteration in original) .

## ANALYSIS

The FAC and proposed SAC[4] bring claims for violations of (1) the Administrative Procedures Act (APA), (2) the Fourth Amendment, (3) the First Amendment and common law due process right of public access to judicial documents, (4) the Fifth Amendment right to substantive due process, (5) the Fifth Amendment right to procedural due process, (6) the Separation of Powers Doctrine, (7) the Tenth Amendment anti-commandeering rule and federalism principle; and (8) Bivens.[5] (Dkts. 35, 44-1.) The Court will examine each of these claims in turn to determine whether ABR has stated a claim upon which relief may

_____

[4] Because of the intertwined nature of the pending motions, the Court will consider both the FAC and the proposed SAC in addressing the Defendants' motions to dismiss or strike.

[5] The FAC also includes a "Property/Territory Clause" claim. ABR has not included that claim in the proposed SAC. Accordingly, the Court finds that ABR has abandoned the claim.

be granted.

## A.    Administrative Procedures Act – Claim I

In Claim I, ABR alleges that the EPA acted arbitrarily and capriciously in violation of the APA when it (1) obtained and executed an *ex parte* administrative search warrant after ABR revoked its consent for the agencies to conduct an onsite visit; and (2) failed to adequately respond to ABR's FOIA request before executing the warrant.

### 1.   *Obtaining and executing an administrative search warrant after ABR revoked consent*

ABR claims that EPA acted arbitrarily and capriciously when it obtained and executed an *ex parte* administrative search warrant after ABR revoked its consent for the agencies to conduct an onsite visit.

Under the APA, courts have jurisdiction to review "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. To constitute "[f]inal agency action," two conditions must generally be met: "First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined,' or from which 'legal consequences will flow.' " *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted).

Here, ABR is challenging EPA's CWA pre-enforcement investigation, including the acts of obtaining and executing an *ex parte* search warrant. EPA argues that neither the pre-enforcement CWA investigation, nor the execution of the search warrant, is a final agency action and that ABR's APA claim must accordingly be dismissed. The Court agrees.

The allegations in the FAC and SAC indicate that the agencies are engaging in an investigation into whether ABR violated the CWA. However, there are no allegations that ABR has been served with a notice of violation of the CWA, that any compliance orders have been issued, or that any CWA penalties have been assessed. Further, it is possible that the agencies may determine that no CWA violations have occurred. Thus, the agencies' actions do not mark the "consummation" of their decisionmaking process.  Further, no legal consequences have flowed from the agencies' actions, nor are the actions determinative of ABR's rights or obligations. Accordingly, the agencies' investigative actions are not final agency actions reviewable under the APA. *See Bennett*, 520 U.S. at 177-78; *see Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994) ("An agency's initiation of an investigation does not constitute final agency action."); *FTC v. Standard Oil Co.*, 449 U.S. 232, 239-45 (1980) (issuance of administrative complaint to initiate proceedings is not "final agency action"); *Reliable Automatic*

*Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731–32 (D.C. Cir. 2003) (agencies' investigation and statement of intent to make a preliminary determination, and request for corrective action is not "final agency action" under the APA because there was no determination or order imposing any obligation on the plaintiff).

ABR's reliance on *Sackett v. E.P.A.*, 566 U.S. 120 (2012) in opposing dismissal is misplaced. In *Sackett*, the Supreme Court held that an EPA compliance order issued under the CWA was a "final agency action" subject to judicial review under the APA because the order determined legal rights and obligations and marked the consummation of the agency's decisionmaking process. *Id.* at 126-127; *see id.* at 126 (noting the legal obligations imposed on the plaintiffs by the compliance order included the obligation to "restore" their property according to an agency-approved plan, and providing EPA with access to their property, and records and documentation related to the property).

Here, ABR does not allege that it faces obligations or consequences as a result of the execution of the administrative search warrant or other investigative activities of the agencies. The challenged actions, including the EPA's obtaining and executing a search warrant, do not require ABR to do or refrain from doing anything.

ABR's reliance on *Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*, Case Civ. No. s-10-2414, 2012 WL 1131387 (E.D. Calif. Mar. 29, 2012) is similarly misplaced. In *Hardesty*, the court held that a cease-and-desist order almost identical to the compliance order at issue in *Sackett* provided standing for the plaintiffs to pursue a Fifth Amendment Due Process claim. *Id.* at *13 (finding plaintiffs' allegations "that information gathered in [a warrantless] search was used as a basis for" a cease-and-desist order to be sufficient to plead harm for purposes of standing). Further, the *Hardesty* court explicitly found that the warrantless search of "the plaintiffs' mine was *not a final agency action* nor part of a cease and desist letter and so the CWA and APA do not provide an adequate means of redress." *Id.* at *17 (emphasis added).

Again, here there is no allegation of a cease-and-desist order. Instead, ABR's allegations are of investigative activity only, and the issuance and execution of an administrative search warrant in conjunction with that investigative activity. The execution of an administrative search warrant is not a final agency action as contemplated by the APA. Rather, such actions are merely interlocutory—they bestow no legal obligation upon ABR and do not consummate the EPA's decisionmaking process. Accordingly, the agencies' actions are not reviewable under the APA.

Finally, the Court will not grant ABR leave to amend this claim because any amendment would be futile. *See Cohen v. Rosenstein*, 804 F. App'x 194, 196 (4th Cir. 2020) (finding proposed amendment of complaint to bolster claim that officials violated the APA when they executed search warrants to be futile because the amendment would not cure fatal defect that agency actions were not "final agency actions" and thus not reviewable under the APA).

### 2. *Failure to respond to FOIA request prior to executing administrative warrant*

ABR appears to also allege that the failure of EPA to respond to their FOIA requests before executing the warrant was arbitrary and capricious in violation of the APA. Review of this claim is not available under the APA.

"[F]ederal courts lack jurisdiction over APA challenges whenever Congress has provided another 'adequate remedy.' " *Brem-Air Disposal v.* Cohen, 156 F.3d 1002, 1004 (9th Cir. 1998) (quoting 5 U.S.C. § 704); *see also Bennett*, 520 U.S. at 161-61 (recognizing that the "APA by its terms independently authorizes review only when 'there is no other adequate remedy in a court' ") (quoting 5 U.S.C. § 704); *see also Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (An "adequate remedy" under the APA includes those "situations where the Congress has provided special and adequate review procedures."). Thus, "[i]f a plaintiff can bring suit against the responsible federal agencies under [a citizen-suit provision],

this action precludes an additional suit under the APA." *Brem-Air*, 156 F.3d at 1005 (alterations in original).

Here, ABR is seeking review under the APA of an alleged FOIA violation, contending that the agencies failed to disclose or improperly withheld agency records. However, FOIA has its own citizen-suit provisions that allow for an aggrieved plaintiff to obtain judicial review. *See* 5 U.S.C. § 552. These provisions provide another "adequate remedy" for ABR's claim that the agencies failed to disclose or improperly withheld records. *See Animal Legal Def. Fund v. United States Dep't of Agric.*, 935 F.3d 858, 877 (9th Cir. 2019) (affirming dismissal of APA claim based on FOIA violation because FOIA provides another adequate remedy); *Elec. Priv. Info. Ctr. v. Internal Revenue Serv.*, 910 F.3d 1232, 1244 (D.C. Cir. 2018) (affirming dismissal of APA claim based on alleged FOIA violation because FOIA provided another adequate remedy) (citing 5 U.S.C. § 552(a)(4)(B)); *Citizens for Resp. & Ethics in Washington v. United States Dep't of Just.*, 846 F.3d 1235, 1245 (D.C. Cir. 2017) ("FOIA offers an 'adequate remedy' within the meaning of section 704."); *Rimmer v. Holder*, 700 F.3d 246, 261-63 (6th Cir. 2012); *Cent. Platte Nat. Res. Dist. v. U.S. Dep't of Agriculture*, 643 F.3d 1142, 1148-49 (8th Cir. 2011); *Walsh v. U.S. Dep't of Veterans Affairs*, 400 F.3d 535, 537-38 (7th Cir. 2005); *see also Kissinger v. Reps. Comm. for Freedom of the*

*Press*, 445 U.S. 136, 150 (1980) ("Under [FOIA] 5 U.S.C. § 552(a)(4)(B) federal jurisdiction is dependent upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.').  Accordingly, review of the agencies' alleged violation of FOIA is not available under the APA and this claim will be dismissed. Moreover, because any attempt to further amend this claim would be futile, the claim will be dismissed with prejudice and without leave to amend. *See Brem-Air*, 156 F.3d at 1005; 5 U.S.C. § 704.

## B. Exhaustion

ABR brings claims under both the Fourth and Fifth Amendment. Defendants contend that these claims are barred because ABR failed to exhaust its administrative remedies in relation to these claims.

Generally, unless a party can demonstrate that "administrative remedies are either inadequate or inefficacious," the "party must exhaust its administrative remedies before seeking relief from or review of an agency decision." *Matter of J. R. Simplot Co.*, 640 F.2d 1134, 1137 (9th Cir. 1981) (holding that the plaintiff's constitutional challenges to an OSHA administrative warrant were not reviewable in federal court until after the plaintiff exhausted its administrative remedies); *cf. Matter of Establish Inspection of Metal Bank of Am., Inc.*, 700 F.2d 910, 915 (3d Cir. 1983) (dismissing appeal from denial of motion to quash warrant for failure to exhaust administrative remedies in pending OSHA proceeding).

Here, ABR could litigate its Fourth and Fifth Amendment claims in an administrative enforcement action for civil penalties under the CWA, *see* 33 U.S.C. § 1319, or in a CWA action brought by the Government in federal court. However, there is no administrative or judicial CWA enforcement action pending in which ABR could pursue its Fourth and Fifth Amendment claims. Accordingly, the Court finds that administrative remedies are not available through which ABR can exhaust these claims and that the claims are therefore not barred under the exhaustion doctrine.

### C.      Fourth Amendment – Claim II

In Claim II, ABR alleges that its Fourth Amendment rights were violated by the agencies' search of its property because the warrant authorizing the search was not supported by probable cause, the warrant was facially unreasonable because it covered ABR's entire 800-acre ranch, and the U.S. Marshals accompanied the execution of the warrant.

#### 1.  *The warrant was supported by probable cause.*

The probable cause required for the issuance of an administrative warrant is lower than that required for a criminal search warrant. *See Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 538 (1967); *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320 (1978) ("Probable cause in the criminal law sense is not required. For purposes of an administrative search . . . probable cause justifying the issuance

of a warrant may be based . . . on specific evidence of an existing violation . . . ."). *Wedgewood Vill. Pharmacy, Inc. v. United States*, 421 F.3d 263, 274 (3d Cir. 2005) ("the standard of probable cause required for an administrative warrant is less than required for a criminal warrant").

For an administrative warrant to issue, (1) there must be specific evidence of an existing violation, or (2) the search must be part of a general neutral administrative plan. *See Marshall v. Barlow's, Inc*., 436 U.S. 307, 320-21 (1978). Probable cause exists to issue a warrant based on specific evidence of an existing violation where the government proffers specific evidence providing "reasonable grounds to believe that such a violation" has occurred. *Id.* at 320 n.16; *see United States v. Andrews*, 2021 WL 2400255, at *2 (D. Conn. June 11, 2021) ("probable cause standard is met where the government proffers specific evidence providing the magistrate 'reasonable grounds to believe a violation has occurred' "); *Eisenberg v. Wall*, 607 F. Supp. 2d 248, 254 (D. Mass. 2009) ("administrative warrants are justified where there is specific evidence of an existing violation of an administrative code or safety regulation").

Here, the warrant application and supporting documents, included the

following information:[6] ABR's property, which is used primarily for ranching, is

transected by the Bruneau River, a water of the United States. (Dkt. 33-3 at 8.) In

late January 2021, the Corps received a tip that an unauthorized sand and gravel

mining operation may be occurring on ABR's property in violation of the CWA.

(Dkt. 33-3 at 2, 13-14.) The Corps confirmed that sand and gravel mining had been

occurring on the property adjacent to the Bruneau River. (Dkt. 33-3 at 8.) The

evidence of this mining operation included photographs of large earth-moving

equipment and scrape marks associated with sand and gravel mining activities.

(*Id.*) Aerial images also showed, among other things, fill or dredging of the river

channel, clearing of banks of the river, establishment of roadways in the sloughs

adjacent to the river and the establishment of numerous slough and river crossings.

In addition, on-the-ground photographs taken on May 18, 2021, by EPA

representatives from a public access point adjacent to the site illustrated the

presence of large stockpiles of sand and gravel and heavy earthmoving equipment

on the site.

---

[6] The Court takes judicial notice of the warrant application, which was filed in *In the Matter of Ace Black Ranches, LLP*, Case No. 1:21-mj-00537-CWD, as Docket 1, and a redacted version of which was filed by the Government in the present action at Docket 33-3. *See* Fed. R. Evid. 201 (Courts may take judicial notice of facts "not subject to reasonable dispute" when they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

The warrant application further stated: Any discharges into the waters of the United States from these activities were not authorized under the CWA. Given the proximity of the sand and gravel mining operation to the Bruneau River, the EPA was "very confident that ABR has discharged pollutants associated with this industrial activity into the waters of the United States. (Dkt. 33-3 at 9.) EPA's authority to enter and access the property would "help confirm that these activities are violations of the CWA." (Dkt. 33-3 at 9.)

The warrant application also included aerial images showing the location that was to be inspected and indicating specific locations where the potential violations were likely to have occurred on the property.

The Court finds that the declaration and other materials included in the warrant application provide specific evidence giving the magistrate judge reasonable grounds to believe violations of the CWA had occurred and that, accordingly, there was probable cause for issuance of the administrative warrant.

### 2. *The scope of the warrant was not unreasonable.*

ABR also alleges that the warrant was facially unreasonable in scope because it covered ABR's entire 800-acre ranch and did not describe the specific places to be searched. The Court disagrees.

The warrant application provided reasonable grounds to believe that CWA violations had occurred on hundreds of acres. Indeed, ABR does not appear to

dispute that the designated area referenced in the warrant application—"the polygon outlined in Exhibit 12—covered almost 400 acres of the ABR property. In light of this information, the location of this polygon, and the transecting of the river across the property, it was not unreasonable for the warrant to designate all 800 acres of the property as subject to inspection and investigation. (*See* Dkt. 33-3 at 85.) Moreover, it is important to note that there is no allegation that EPA actually searched the entire 800 acres. Further, the warrant application provided detailed information on the areas EPA primarily sought to search. (Dkt. 33-3 at 12 (requesting authorization to "enter the portions of the Site identified within the polygon illustrated on Exhibit 12"; and to "inspect and obtain samples from the soils, surfaces, or materials or from any location of any suspected pollutant or contaminant at or within the polygon . . .").)

### 3. *Presence of U.S. Marshals during execution did not violate ABR's rights under the Fourth Amendment.*

The warrant provides: "The United States Marshal, or any state and/or local law enforcement official, is hereby authorized to assist EPA in such manner as may be reasonably necessary and appropriate to execute this warrant and all the provisions contained herein . . . ." (Dkt. 33-3 at 86-87.)

ABR acknowledges this provision, and that the warrant explicitly allows Marshals to accompany the agencies' representatives during execution of the

warrant. Nonetheless, ABR contends that EPA failed to justify why it was

necessary to have five Marshals present during the execution and that the presence

of the Marshals therefore rendered execution of the warrant unreasonable.

ABR has not cited any authority in support of its contention. The Court has

also not located any authority indicating that allowing Marshals to accompany

agents in the execution of an administrative search warrant, particularly one

covering hundreds of acres, is unreasonable – let alone a violation of the Fourth

Amendment.

### 4.   *The alleged misrepresentations and omissions in the application.*

Finally, ABR alleges that the warrant application contains material

misrepresentations and omissions. These purported misrepresentations/omissions

relate to the warrant application's statements regarding a May 18,

2021, reconnaissance visit to property adjacent to the ABR property and a

statement in the application regarding ABR's USDOT license.

### a.   *May 18, 2021, Reconnaissance Visit to Adjacent Property*

The warrant application, and specifically a declaration from Charissa Bujak,

states: "EPA conducted a reconnaissance off-site visit on May 18, 2021, and took

pictures from [redacted] property which is adjacent to the Site. During this

reconnaissance off-site visit, *EPA inspectors* observed evidence of gravel mining

activity, such as numerous stockpiles of gravel and large equipment staged

adjacent to the Bruneau River." (Dkt. 33-3 at 17 (emphasis added).)

ABR alleges that this was a misrepresentation and/or omission because "there were no trained EPA compliance monitoring inspectors present during the May 18, 2021, offsite reconnaissance." (Dkt. 35 at 53; Dkt. 44-1 at 45-46.) ABR focuses on two EPA personnel that were apparently present during this reconnaissance visit—Charissa Bujak and Yvonne Vallette—but also lists others. ABR contends that the warrant application had material "intentional misrepresentations and/or omissions" because

> EPA's website identifies Bujak as an EPA Region 10 Tribal Specialist and Wetland Grant Contact rather than as a trained, federal credentialed, and experienced "EPA inspector," and identifies EPA employee Yvonne Vallette both as Oregon Coordinator and Wetland Grant Contact for the EPA Region 10 Wetland Grant Program, rather than as a trained, federal credentialed, and experienced "EPA inspector" (thus revealing, contrary to what Bujak had declared, that the May 18, 2021 offsite reconnaissance visit conducted by Bujak and Vallette, along with EPA Defendants Johnson, Moore, Schrader, and Joyner, had not been conducted by trained, federal credentialed, and experienced "EPA inspectors")

(Dkt. 63 at 12.)

In other words, ABR's argument is that the warrant application's statement that during the May 18 reconnaissance visit, "EPA inspectors" observed evidence of mining activity, was a misrepresentation and/or omission because, according to ABR, none of the individuals present were "trained EPA compliance monitoring

inspectors," or "trained, federal credentialed, and experienced 'EPA compliance monitoring inspectors.' " This argument is entirely without merit because the warrant application did not represent that the EPA inspectors were either trained compliance monitoring inspectors or trained, credentialed, experienced compliance monitoring inspectors. Instead, the application simply stated that there were EPA inspectors present. Neither the FAC nor the SAC contains allegations demonstrating that none of the individuals present at the May 18 reconnaissance visit were EPA inspectors.

Moreover, even assuming that none of the individuals present at the May 18 reconnaissance visit were EPA inspectors, ABR has not alleged facts demonstrating that the identity of the EPA personnel as inspectors (as opposed to some other position) was material to the issuance of the warrant. Specifically, the warrant application stated that during the May 18 visit, EPA inspectors observed evidence of gravel mining activity, including numerous stockpiles of gravel and large equipment staged adjacent to the Bruneau River. Photos taken of those observances were included as part of the warrant application. If the reference to "EPA inspectors" is stricken and replaced with "EPA personnel," for example, the impact of the application's reference to the May 18 visit remains the same. In other words, whether the EPA personnel present at the May 18 visit were "inspectors" or

were, instead, simply EPA personnel, is immaterial and does not change the impact of the application materials or the Court's determination that the application established probable cause for issuance of the warrant.

### b. The USDOT License Information

ABR contends that the warrant application contained a misrepresentation and/or omission in relation to ABR's U.S. Department of Transportation (USDOT) license. Specifically, the warrant application states, "It is EPA's understanding that ABR holds a license issued by the U.S. Department of Transportation allowing the entity to haul gravel across state lines." (Dkt. 33-3 at 8.) The warrant application also provided a link to the U.S. DOT website and provided ABR's USDOT number so that the magistrate judge could look up the USDOT information herself. (Dkt. 33-3 at 8 n.10.)

ABR alleges that this information was a misrepresentation and/or there was an omission because the application did not state that ABR's USDOT license covers the hauling of livestock, as well as gravel, and that livestock has long been ABR's primary business.

The Court does not find that the warrant application contained a misrepresentation or an omission in relation to the USDOT license information. As noted, the warrant application did not state that the USDOT license was only for gravel, but instead stated that the USDOT license allowed ABR to haul gravel.

This information is supported by the USDOT website, which indicates that ABR's USDOT license allows ABR to transport both livestock and gravel across state lines. *See*  https://safer.fmcsa.dot.gov/CompanySnapshot.aspx and enter USDOT number 604404 (last visited February 3, 2022).

Moreover, even assuming that the lack of mention of the USDOT license allowing ABR to haul livestock in addition to gravel could be considered an omission or misrepresentation, it is not material. First, the sentence in the warrant application that is previous to the one referencing the USDOT license makes clear that ABR's property is used primarily for ranching: "The Site is primarily used for ranching activities, but also contains a sand and gravel mining operation. . . ." (Dkt. 33-3 at 8.)  Thus, the magistrate judge had the information before her that the primary use of the ABR property was for a ranch and that it was not used primarily for mining and gravel operations. Including the additional information that ABR's USDOT license also allowed ABR to transport livestock across state lines would not change the result here because ranching was already established in the warrant application as the primary use.

Second, if the information that ABR had a USDOT license that allows for the hauling of gravel is entirely stricken from the warrant application, the application still provides probable cause for issuance of the administrative warrant

because the application provides specific evidence giving the magistrate judge reasonable grounds to believe violations of the CWA had occurred.

### 5. *Conclusion regarding Fourth Amendment Claim*

ABR has failed to state a claim for violation of the Fourth Amendment. Accordingly, the Fourth Amendment claim will be dismissed. Further, the Court finds that any attempt to amend the Fourth Amendment claim would be futile. The claim will therefore be dismissed with prejudice and without leave to amend.

### D.   **First Amendment and Common Law Due Process Right of Public Access to Judicial Documents – Claim III**

In Claim III, ABR alleges that it has a First Amendment and common law due process right to have the administrative search warrant proceeding unsealed, and to obtain a full and unredacted copy of the administrative search warrant application and "post-investigation warrant-related documents," filed in that proceeding.[7] ABR concedes that EPA has provided redacted copies of the warrant application and supporting documents but alleges that it is entitled to have access to the entire search warrant proceeding and unredacted copies of everything filed in that proceeding. (Dkt. 35 at 62-63; 44-1 at 56-58.)

---

[7] For ease of reference, the administrative search warrant proceeding is *United States of America v. Ace Black Ranches, LLP*, Case No. 1:21-mj-00537-CWD-1 (D. Idaho).

This claim fails. EPA has no power over the disclosure of official judicial documents or the unsealing of a judicial proceeding and thus cannot provide ABR the relief it seeks. If ABR would like to access the docket and documents filed in the search warrant proceeding, Case No. 1:21-mj-00537-CWD-1, it must seek to obtain that access through a motion or petition filed in that case.

Accordingly, ABR's  First Amendment and common law due process right of public access for judicial documents claim is not cognizable in this case and will be dismissed. Further, because any attempt to amend this claim would be futile, the dismissal will be with prejudice and without leave to amend.

### E.      Fifth Amendment Substantive Due Process – Claim IV

In Claim IV, ABR alleges that Defendants violated its Fifth Amendment substantive due process rights.

"Substantive due process 'forbids the government from depriving a person of life, liberty, or property in such a way that shocks the conscience or interferes with the rights implicit in the concept of ordered liberty.'" *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (citation omitted). Protected, "fundamental" rights are "those personal activities and decisions that this Court has identified as so deeply rooted in our history and traditions, or so fundamental to our concept of constitutionally ordered liberty, that they are protected []." *United States v. Juvenile Male*, 670 F.3d 999, 1012 (9th Cir. 2012) (quoting *Washington v.*

*Glucksberg*, 521 U.S. 702, 727 (1997)). "Those rights are few, and include the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to abortion, and to refuse unwanted lifesaving medical treatment." *Id.* A plaintiff must provide "a careful description of the asserted fundamental liberty interest," *Glucksberg*, 521 U.S. at 721, or "a narrow definition of the interest at stake." *Raich v. Gonzales*, 500 F.3d 850, 863 (9th Cir. 2007) (citing *Glucksberg*, 521 U.S. at 722). A protectable property interest generally only exists where a legitimate claim of entitlement exists.[8]

   Here, ABR alleges that it has a protected property interest in a reasoned decision from EPA, subject to limited agency discretion, reached by applying rules to facts. It clams that this right was violated when EPA demanded ABR provide detailed information regarding an onsite inspection of its 800-acre ranch. ABR has not, however, pled any facts that demonstrate it has a protectable property interest

--------

[8] *See, e.g., Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207 (10th Cir. 2000) (property owner did not have protectable property interest in having city council approve proposed subdivision plat for its land because it was not entitled to the plat's approval); *Fleury v. Clayton*, 847 F.2d 1229 (7th Cir. 1988) (doctor had protectable property interest in a "clean" license to practice medicine thus entitling doctor to a reasoned decision as to why doctor was censured by medical board); *Santa Fe Ski Co. v. Bd. of Cty. Comm'rs of Santa Fe Cty.*, 2004 WL 7337996, at *4 (D.N.M. Apr. 29, 2004) (ski company had protectable property interest in its proposed ski resort because it had received all necessary federal permits to construct thus entitling it to a reasoned decision when county zoning board denied the ski resort's application).

in receiving a reasoned explanation for EPA's decision to undertake pre-enforcement, investigative actions. ABR merely asserts that it has a legal right to such a decision. This "legal conclusion couched as a factual allegation," need not be, and will not be, taken by the Court as true, *Twombly*, 550 U.S. at 555, and is accordingly rejected by the Court.

Further, EPA has broad pre-enforcement, investigative discretion under the CWA to request information from potential CWA violators "[w]henever required to carry out the objective of this chapter[.]" 33 U.S.C. § 1318(a). The EPA's exercise of that authority and discretion does not create a property interest or substantive due process right for which ABR can state a claim for infringement. *See Doyle v. City of Medford*, 606 F.3d 667, 672 (9th Cir. 2010) ("A regulation granting broad discretion to a decision-maker does not create a property interest.").

ABR also alleges that it has a protected property interest in remaining secure in its choice to earn a living by operating its 800-acre ranch pursuant to Idaho state appropriated water rights without undue government interference. However, ABR cites no authority in support of this asserted property interest. Moreover, ABR has provided no factual allegations demonstrating that EPA's actions have prevented ABR  from continuing to operate its ranch. Finally, to the extent ABR is alleging that it has a protected property interest in continuing operations that violate the

CWA or other federal law or regulation, such a claim is entirely without merit and cannot support a Fifth Amendment substantive due process claim.

ABR has failed to state a claim for violation of its Fifth Amendment substantive due process rights. The claim will therefore be dismissed. Further, because any attempt to amend the claim would be futile, the dismissal will be with prejudice and without leave to amend.

### F.    Fifth Amendment Procedural Due Process  - Claim V

In Claim V, ABR alleges that Defendants violated its Fifth Amendment right to procedural due process.

A procedural due process claim has two essential elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. *Brewster v. Board of Educ. Of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

ABR alleges that EPA violated its Fifth Amendment procedural due process rights when EPA failed to provide notice and an opportunity to be heard regarding the inspection at the ranch and EPA's CWA § 308 information and inspection requests. However, as discussed above, ABR has failed to identify any recognized protected property interest impacted by EPA's exercise of its authority under the CWA to engage in this pre-enforcement investigative action. ABR has thus failed to allege facts demonstrating deprivation of a constitutionally protected liberty or

property interest. This claim accordingly fails.

ABR also alleges that EPA's use of the *ex parte* procedure to apply for and secure the administrative warrant violated its procedural due process rights. This claim fails in light of Ninth Circuit authority affirming that EPA may lawfully obtain and use *ex parte* search warrants to conduct pre-enforcement investigation. *Bunker Hill Co. Lead and Zinc Smelter v. U.S. Environmental Protection Agency*, 658 F.2d 1280, 1285 (9th Cir. 1981) (affirming EPA's authority to obtain and use *ex parte* administrative warrant to enter and inspect the plaintiff's property to conduct Clean Air Act inspection); *see Matter of Alameda Cty. Assessor's Parcel Nos. 537-801-2-4 & 537-850-9*, 672 F. Supp. 1278, 1287 (N.D. Cal. 1987) ("Under the CWA and § 308, the EPA has the authority to seek an *ex parte* administrative search warrant."); *see also Stoddard Lumber Co. v. Marshall*, 627 F.2d 984 (9th Cir. 1980) (affirming Secretary of Labor's authority to obtain and use *ex parte* warrant to conduct OSHA inspection).

In sum, ABR has failed to state a claim for violation of its Fifth Amendment right to procedural due process. This claim will thus be dismissed. Further, because any attempt to amend the claim would be futile, dismissal is with prejudice and without leave to amend.

## G.     Separation of Powers – Claim VI

In Claim VI, ABR is alleging that injuries-in-fact arising out of violations of

its constitutional rights as alleged in Claims II through V are "fairly traceable" to Defendants' "unlawful effort to strip this Court or to effectuate its transfer of subject matter jurisdiction over ABR's claims. . . ."  (Dkt. 63 at 21.) As discussed above, Claims II through V do not state a claim for relief and will be dismissed. Accordingly, to the extent Claim VI relies on Claims II through V, Claim VI fails to state a cognizable claim.

ABR is also alleging that any grant of deference to EPA's interpretation of the CWA, along with other speculative future events, would violate the Separation-of-Powers Doctrine and would imminently violate ABR's rights and liberty interests protected by the First, Fourth, and Fifth Amendments. (Dkt. 35 at 86; Dkt. 44-1 at 80.) ABR's speculation that inappropriate deference will be given to EPA's interpretations of the CWA sometime in the future does not state a cognizable claim. First, the claim is not ripe as it relies on future potential speculative events that may or may not occur. Second, the Court is authorized to defer to EPA, which is the expert agency entrusted by Congress to implement and enforce the CWA. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations.")

(footnote omitted). Thus, the granting of such deference would not raise separation-of-powers issues.

ABR has failed to state a cognizable separation-of-powers claim. This claim will thus be dismissed. Further, because any attempt at amendment of the claim would be futile, dismissal will be with prejudice and without leave to amend.

## H.     Tenth Amendment, Anti-Commandeering Rule, and Federalism – Claim VII

In Claim VII, ABR alleges that EPA violated the Tenth Amendment and principles of Federalism because it assumed lead agency status over several Idaho state agencies and officials, including the Idaho Department of Environmental Quality, Idaho Department of Fish and Game, and Idaho Department of Water Resources. ABR also alleges that the EPA violated the Tenth Amendment's anti-commandeering doctrine by conscripting Idaho state personnel to assist with obtaining and executing the administrative warrant; and by granting authority to Idaho agencies to issue National Pollutant Discharge Elimination Permits under a Memorandum of Understanding pursuant to the Clean Water Act Section 402(b).[9]

_____

[9] Section 402(b) states: "[T]he Governor of each State desiring to administer its own permit program for discharges into navigable waters within its jurisdiction may submit to the Administrator a full and complete description of the program it proposes to establish and administer under State law or under an interstate compact."

These claims are not cognizable for a number of reasons. First, it appears that ABR lacks standing to pursue a Tenth Amendment claim based on injury to the sovereign interests of the state of Idaho. *See Tenn. Elec. Power Co. v. Tenn. Valley Auth.*, 306 U.S. 118, 144 (1939) (private parties not acting in any official capacity or in conjunction with a state do not have standing to assert a Tenth Amendment claim); *Nance v. EPA*, 645 F.2d 701, 716 (9th Cir. 1981) ("insofar as the [T]enth [A]mendment is designed to protect the interest of the states qua states," the "standing of [private parties] to assert" a Tenth Amendment claim "may be seriously questioned").

Second, even assuming ABR has standing, EPA's assumption of lead role in investigating potential CWA violations does not, in and of itself, implicate the Tenth Amendment.

Third, ABR fails to allege facts showing that EPA coerced or conscripted Idaho personnel against their will in any way.

Fourth, *Printz v. United States*, 521 U.S. 898 (1997), and *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018), upon which ABR relies, are distinguishable from the present case and do not demonstrate that ABR has a Tenth Amendment claim.

In *Printz*, the Supreme Court struck down portions of the Brady Handgun

Violence Prevention Act, which *required* local chief law enforcement officers

(CLEOs) to perform background-checks on prospective handgun purchasers. 521

U.S. 898. Because that portion of the law *compelled* CLEOS to execute federal

laws, the Supreme Court struck down that portion of the law as an unconstitutional

commandeering of state officers. *Id.* at 933.

Likewise, in *Murphy*, 138 S. Ct. 1467, the Supreme Court was confronted

with a law—the federal Professional and Amateur Sports Protection Act

(PASPA)—which, inter alia, banned state laws that authorized sports betting.

Thus, through this law, Congress had unequivocally dictated what a state

legislature could or could not do and specifically banned state laws that authorized

sports betting. *Id*. at 1478. The state of New Jersey challenged the law on the

theory that the federal prohibition acted as a substitute for the State's traditional

police power, and thus made state legislatures act as a puppet of Congress. The

Supreme Court agreed and struck down the law as in violation of the

anticommandeering doctrine and therefore unconstitutional. *See id.* ("It is as if

federal officers were installed in state legislative chambers and were armed with

the authority to stop legislators from voting on any offending proposals.").

Here, in contrast, the CWA's National Pollution Discharge Elimination

System (NPDES) permitting program, by its terms, does not require a state to do,

or refrain from doing, anything. *See* 33 U.S.C. § 1342. Rather, the CWA lays out a process by which a State "desiring to administer its own permit program for discharges into navigable waters within its jurisdiction" *may submit* a proposal to the EPA to take over such responsibility. *Id.* at 1342(b).  A state that volunteers to institute and administer the CWA's NPDES permitting program may do so upon EPA's approval. *Id.* If a state does not wish to administer the NPDES permitting program, the EPA administers the program through its own agents and offices. Thus, in stark contrast to the Brady Bill and PASPA, the CWA cannot be called "a federal statute that unambiguously require[s] the States to enact or administer a federal regulatory program…" *Printz*, 521 U.S.  at 926.

The EPA violates no principle of Constitutional or federal law by working together with a consenting state to effectuate federal environmental policy as the Tenth Amendment "do[es] not prohibit congress from obtaining a state's voluntary consent to federal jurisdiction." *MCI Telecomm. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 343 (7th Cir. 2000).

In sum, ABR has not stated a cognizable claim for violation of the Tenth Amendment or the anti-commandeering doctrine. Claim VII will accordingly be dismissed.  Further, because any attempt to amend Claim VII would be futile, it will be dismissed with prejudice and without leave to amend.

## I.     *Bivens* – Claim VIII

In Claim VIII, ABR asserts a claim under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (Dkt. 35 at 120-129; 44-1 at 93-102.)

*Bivens* allows an individual to sue a federal employee for damages for violating the individual's Constitutional rights. *Id.* at 91. It is not a stand-alone, independent claim but must, instead, be based on an underlying constitutional violation. *See Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992) (stating that, to maintain a *Bivens* action, a plaintiff must show, among other things, that a federal employee violated one of the plaintiff's established Constitutional rights).

Here, the underlying constitution violations upon which ABR relies in support of its *Bivens* claim are the alleged Fourth Amendment and Fifth Amendment violations, discussed above. Because the Fourth and Fifth Amendment violation claims will be dismissed for failure to state a claim, these alleged violations cannot be used to support ADR's *Bivens* claim. The *Bivens* claim must therefore also be dismissed.

## J.     Leave to Amend

Under Federal Rule of Civil Procedure 15(a), leave to amend is to be freely given when justice so requires. Nevertheless, "[a] district court ... may ... deny

leave to amend due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (internal quotation marks and alteration omitted).

"An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (quoting *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)).

As discussed above, ABR has failed to provide allegations sufficient to state any claim for relief in either the FAC or the SAC. Granting leave to file the SAC would thus be futile. The Court also finds that any attempt to further amend the complaint would be futile as the underlying facts as alleged by ABR are clear, and those facts simply do not support ABR's claims for relief.

### K.    Motion to File Supplemental Authority

ABR has filed a notice of supplemental authority (Dkt. 64) and motion for leave to file notice of supplemental authority (Dkt. 69). The notice and motion do not actually provide supplemental authority, but instead provide additional information received by ABR in response to its FOIA requests. Because the Court is dismissing the FOIA claims without leave to amend, the supplemental

information ABR seeks to have the Court consider is not relevant to any claim

before the Court. Accordingly, the motion to supplement will be denied.

## ORDER

**IT IS ORDERED that:**

1.      Defendants' Second Motion to Dismiss (Dkt. 50) is  GRANTED. This case is dismissed in its entirety with prejudice.

2.      Defendants' Motion to Strike or Dismiss the First Amended Complaint  (Dkt. 38) is DENIED as moot.

3.      Plaintiff's motion for leave to file a second amended complaint is DENIED.

3.      Plaintiff's motion to file supplemental authority (Dkts. 64, 69) is DENIED.

DATED: February 4, 2022

_____

B. Lynn Winmill
U.S. District Court Judge